IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


PATRICK C. LYNN,

                    Plaintiff,

          v.                    CASE NO. 06-3172-SAC

RENEE ANDERSON-VARELLA,
et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

     This civil complaint naming over 200 defendants was filed upon
payment of the fee by Patrick Lynn, an inmate of the El Dorado
Correctional Facility, El Dorado, Kansas (ECF).  As the basis for
this action, plaintiff claims he is being subjected to
constitutional wrongs and injuries that have continued since
approximately May 1, 2000, mainly involving denial of his right of
access to the courts and retaliation against him for exercising his
First Amendment rights.


<u>SCREENING</u>

     In a prior Memorandum and Order the court liberally construed
the complaint as asserting at least 15 specific claims and
summarized the declaratory, injunctive, and monetary relief
requested by plaintiff.  Upon screening, as mandated by 28 U.S.C.
§1915A(a) and (b), the court found the complaint subject to being
dismissed.  It therefore issued an order requiring plaintiff to show

cause why this action should not be dismissed for failure to state a claim, failure to plead full and total exhaustion of administrative remedies[1], and other reasons set forth in the prior Memorandum and Order.

Plaintiff has since filed multiple pleadings with motions and numerous exhibits. Having carefully reviewed and considered all the materials filed by plaintiff, the court concludes Mr. Lynn has failed to show cause why this action should not be dismissed under 42 U.S.C. §1997e(c)(1), for failure to state a claim. The court further finds the complaint is frivolous and malicious. 28 U.S.C. §1915A(b)(1). Plaintiff also failed or refused to comply with this court's order to file a second amended complaint on court-provided forms in conformance with D. Kan. Rule 9.1(a),(f)[2]. Plaintiff was advised his claims of denial of access were not supported by adequate facts, he had failed to state a claim against any of the federal officials or officials at the Kansas Attorney General's office, his claims of conspiracy were completely conclusory, his requests for this court to initiate criminal investigations and prosecutions were misdirected, and his claims of violations of state laws and prison regulations were not grounds for relief under 42

---

[1]  The court advised plaintiff in its prior order that this action was subject to being dismissed under the "total exhaustion" rule of Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004). However, that case and rule have recently been abrogated by the United States Supreme Court in Jones v. Bock, 2007 WL 135890 (Jan. 22, 2007). Accordingly, the determination of this action is not based upon plaintiff's failure to plead or show exhaustion of administrative remedies.

[2]  Mr. Lynn responded that it is "impossible" for him to use the 1983 complaint forms provided by the court, but alleged no facts in support of this conclusory statement.

U.S.C. 1983.  None of plaintiff's subsequent pleadings or exhibits cures the deficiencies in his complaint.  Consequently, the court determines this action should be dismissed for failure to state facts in support of a claim of constitutional deprivation.  28 U.S.C. §1915(A)(b); 42 U.S.C. §1997e(c)(1).

## REQUESTS FOR RECUSAL OF UNDERSIGNED JUDGE

Plaintiff made allegations in his initial filings, which were treated as a motion to recuse and denied in the court's prior order. In Document 10, plaintiff moves for this case to be transferred to the Honorable Chief U.S. District Judge Lungstrum, and claims the undersigned judge has a conflict of interest.  Plaintiff offers no facts in support beyond prior rulings.  Plaintiff's more recent pleading entitled "Additional Motion for Emergency Oral Arguments and Interventions" (Doc. 17) includes a "request" for "immediate urgent recusal of Judge Crow and reassignment" of the case. Plaintiff's many other angry comments and accusations in his pleadings have not been construed as additional motions to recuse. Mr. Lynn has made many spurious remarks about the undersigned judge and nearly all judges who have issued adverse orders in the numerous lawsuits filed by him.  He has not filed a pleading encaptioned "Motion to Recuse," nor has he filed an affidavit stating adequate facts to support such a motion.  A federal judge has a duty not to recuse himself except upon a proper, substantiated motion. Plaintiff may not force a recusal simply by filing a judicial misconduct complaint also filled with spurious statements.  The

court finds no factual or legal basis is stated for plaintiff's imbedded requests for reassignment and recusal, and they are all denied.

## OBJECTIONS AND REQUEST FOR RECONSIDERATION

The first document filed by plaintiff in response to the court's show cause order is entitled "Objections to Everything; Motion for Reconsiderations (sic) and Oral Arguments; Request for Waiver of Filing Separate Motions; Request for TRO/Prospective Relief; Motion for Alternative Equitable Orders and Request for Stay." This document was copied by the clerk and filed as two separate pleadings. In his "Objections" (Doc. 5), plaintiff angrily criticizes and accuses the undersigned judge and others for requiring his compliance with orders, court rules, and statutes. He objects to the court's show cause order, and makes an imbedded request for reconsideration. He also repeats conclusory allegations of being denied access and prevented from challenging his state convictions, and complaints about state court actions and rulings. The court finds no reason is alleged or exists for it to reconsider its prior Memorandum and Order to Show Cause, and denies the request for reconsideration.

## REQUESTS FOR PRELIMINARY RELIEF

At the outset, the court notes Mr. Lynn repeatedly alleges he cannot respond to this court's show cause order unless the court

intervenes with respect to the restrictions on his mailing and writing materials.  However, Mr. Lynn's statements in this regard are completely conclusory.[3]  Moreover, his statements are plainly refuted by the amount of materials he has managed to submit in this case alone, much of which is repetitive and irrelevant.  Since the court entered its show cause order, plaintiff has submitted 12 pleadings, each with exhibits attached.  He does not describe any set of facts or exhibit, which he has been unable to submit.  Nor does he explain what exhibits or facts could not have been submitted among, or instead of, materials already filed by him.  The court concludes plaintiff has shown no actual necessity, or legal or factual basis, for the preliminary intervention he requests.

### ABUSIVE, MALICIOUS FILINGS

The court has considered all materials filed by plaintiff, but discusses only some.  Mr. Lynn's filings are very disorderly; muddled with his angry rants and threats against prison employees[4], court personnel, and persons involved in his prosecution; and interspersed with repeated conclusory claims of denial of access and

---

[3]     Plaintiff has made the same conclusory claim in other cases, while submitting voluminous materials.  He then accused those courts, as he undoubtedly will this court, of not having considered all the materials he needed to present.  Federal court records of Mr. Lynn's cases are judicially noticed and reveal he has had more than ample time, opportunity, and means in his federal habeas corpus case, this case, and prior federal civil rights cases to present any relevant pleading or exhibit.

[4]     In one document, Mr. Lynn stated he feels much better after he has verbally abused someone, which may be a brief insight into his seemingly compulsive abuse of others, the judicial process, and the prison grievance process.

other mistreatment.  It is apparent from his own exhibits and his litigation history that he has constantly threatened to sue prison officials and others; that he often has sued for harassment purposes as when he sues the victim, witnesses, and even jurors involved in his criminal prosecution; and that he refers to past and pending litigation to intimidate officials to do his bidding. The court finds from plaintiff's filings in this and other cases that he continues to trample upon court decorum and waste limited judicial resources.

Accordingly, Mr. Lynn is herein ordered to omit his angry, profane rants from his filings in this court.  He is advised to also omit his legal conclusions and his speculations as to others' motives and actions.  The court shall specifically order that any document filed by Mr. Lynn in this case after entry of this order, whether as a pleading, motion, argument, or exhibit, containing even a single profanity, vulgar reference, or suggestion of a threat against any person will be stricken from the record and given no further consideration by this court.


## DENIAL OF ACCESS TO THE COURTS

The court finds Mr. Lynn has failed to show cause why this action should not be dismissed for failure to state sufficient facts in support of his claim of denial of access to the courts.  The court proceeds to discuss this claim and some of plaintiff's exhibits, which appear to have been submitted in relation it.

The bulk of plaintiff's allegations are construed as falling

under his assertion of a denial of access to the courts, including: (1) he has no income, is indigent, and cannot pursue redress; (2) he is not provided a sufficient amount of free postage, writing paper, pens or pencils, envelopes and legal copies; (3) he is "not allowed" to file court documents; (4) he is not allowed to file administrative grievances; (5) he is not allowed to challenge his criminal convictions; (6) he is not allowed to challenge his conditions of confinement; (7) he has been transferred out of state and retaliated against for filing suit; (8) state and federal officials have refused to enforce his rights; (9) the state court has refused to allow him to appeal; and (10) defendant Cummings has ordered his legal files ransacked, and crucial items were taken.

Even a cursory scan of Mr. Lynn's filings herein and court records of his prior federal cases discloses that his claim of being denied access to the courts is ludicrous. The Honorable U.S. District Court Judge Belot, in an order entered in another civil action filed by Mr. Lynn (Lynn v. Roberts, Case No. 01-3422-MLB at *1 (Dec. 5, 2005), found that case was "one of twenty-two cases brought in this district" in which Lynn appeared as plaintiff or otherwise sought leave to join as plaintiff. In another federal civil case filed by Lynn it was noted that by October 19, 1998, he had acquired six strikes for purposes of 28 U.S.C. §1915(g)[5] in federal court. See e.g., Lynn v. McClain, 162 F.3d 1173, *3 (10th

---

[5]      Section 1915(g) limits a prisoner's ability to proceed in forma pauperis in civil actions after the dismissal of three such actions on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted.

Cir., Oct. 19, 1998, unpublished); see also Lynn v. McClain, Nos. 00-3158, 00-3338, 01-3036 (10th Cir. 12 Fed.Appx. 676, 2001 WL 328672 and cases cited at *1, FN1 (10th Cir., April 4, 2001, unpublished). In Stovall v. Lynn, 26 Kan.App.2d 79 (Kan.App. Apr. 9, 1999), review denied (Jun. 8, 1999), the Kansas Court of Appeals listed nine civil lawsuits filed by Lynn in Kansas state courts in a four-month period, and affirmed filing restrictions imposed upon him by a state district court. This court finds it has been clearly documented and determined by state and federal judges that Mr. Lynn has seriously abused the judicial process. He continues to abuse that process, despite reasonable restrictions placed upon on him by federal judges, state courts, and prison authorities.

Even if the court disregarded Mr. Lynn's abusive litigation history, his assertions of denial of access should be dismissed for failure to state a claim because he does not allege sufficient facts in support. It is well-established that a prison inmate has a constitutional right of access to the courts. However, as plaintiff was advised in the court's show cause order, to state a claim of denial of that right, he must allege something more than mere conclusory statements. He must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim," causing him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350 (1996). He may do so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a non-frivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353. He

8

cannot establish "relevant actual injury" merely by repeatedly stating his opinion that the amount of writing and mailing materials he receives is inadequate or that he is being prevented from filing. <u>Lewis</u> at 351. Mr. Lynn has not described a single incident of actual injury to any non-frivolous lawsuit he has filed, and has not complied with the court's directive to provide or cite court orders indicating he has had cases dismissed or impeded due to the limitations on his writing and mailing materials or other allegations[6].

The exhibits plaintiff has submitted, which the court assumes he proffers in connection with this claim[7] also fail to provide sufficient, additional facts showing actual injury.

**<u>Documents 5 & 6</u>**

With his initial response (Doc. 5) to this court's show cause order, plaintiff exhibited forms captioned "Inmate Request to Staff Member," in which he had requested additional supplies. These requests are simply his demands for more materials and do not contain additional facts showing a genuine need.

Document 6 is a copy of Document 5, construed and filed as motions and requests. In this pleading, Mr. Lynn complains he does

---

[6] Plaintiff's federal cases were not dismissed because of any action or inaction on the part of prison officials or other defendants. Instead, court records indicate Mr. Lynn has had many motions denied and cases dismissed because he filed inadequate or irrelevant responses or did not present a legal or factual basis for his claims.

[7] Plaintiff was directed in the court's prior order to submit an amended complaint on forms providing an orderly listing of his claims. Instead, he submitted a stream of pleadings with numerous exhibits attached in scattershot fashion, rarely indicating which exhibits were intended to relate to which claims.

not have sufficient materials to file separate motions and seeks a "Waiver of Filing of Separate Motions." At the same time, he has filed multi-paged motions containing repetitive, superfluous statements. This request is moot, since plaintiff has been allowed to file pleadings with imbedded motions, and all have been thoroughly considered.

Plaintiff also seeks a 90-day stay and oral arguments to respond to the court's prior order, but states no facts indicating either is necessary. In any event, far more than 90 days have passed since a stay was requested, and Mr. Lynn has submitted numerous additional documents[8]. He has no right to stay determination of this matter or for a hearing with oral arguments given that his claims have not been shown during screening to be supported by adequate facts. For the reasons stated above, the court finds Documents 5 and 6 are not responsive to the court's prior Memorandum and Order, and all motions and requests therein are denied as without legal or factual basis.

**<u>Documents 7 & 8</u>**

The pleading submitted by plaintiff entitled "Plaintiff's Second Evidentiary and Exhaustion Proofs-And Motion for Oral Arguments" was also copied by the Clerk and filed as two separate pleadings (Docs. 7 & 8). Plaintiff again makes the conclusory statement that he "cannot elaborate due to only having a 2 inch pencil." He repeatedly moves for oral arguments by video

---

[8]   The court reiterates for emphasis that Mr. Lynn has had months to submit materials and has submitted numerous pleadings and exhibits.

teleconference and a "TRO." These motions are denied as without factual or legal basis.

The exhibits attached to this pleading include documents and correspondence from state cases in which Mr. Lynn argues he is being denied access due to judicial bias of two judges and restrictions. One exhibited order is from a state habeas action concerning Lynn, but filed by inmate Kelley as Lynn's "next of friend," <u>Kelley v Roberts</u>, Case No. 2006 CV-0019 (Jan. 18, 2006). This action was dismissed by the Butler County District Court because Kelley lacked legal capacity to pursue a claim on behalf of Lynn, and it was viewed as an attempt by Lynn to circumvent filing restrictions previously imposed upon him by the Kansas courts (Doc. 7, Attach. #20). These materials do not show that plaintiff was unlawfully denied access, but rather that his case was dismissed for legitimate reasons.

Plaintiff also exhibits correspondence from him to some officials, including an attorney with Legal Services for Prisoners, Chief Judge McFarland of the Kansas Supreme Court, former Kansas Attorney General Phil Kline, and another attorney in the Attorney General's Office, complaining of denial of access and retaliation. These letters contain Mr. Lynn's complaints and opinions that restrictions have amounted to a denial of access, rather than facts showing actual injury[9].

---

[9]     Lynn wrote Mr. Kline that he had lost three cases he would have otherwise won because prison officials' refused to mail his Petitions for Review for timely filing. Lynn may intend that his complaints in this letter be regarded as evidence of his alleged denial of access. However,

Plaintiff next exhibits correspondence with the Kansas Commission on Judicial Qualifications regarding his complaints against judges handling his state cases[10]. The Commission determined his complaints contained no facts evidencing judicial misconduct[11]. These exhibits do not contain crucial, supporting facts.

Lynn also exhibits complaints he made that Judge Sanders refused to waive the fee for an appeal in a state case filed by him.

---

he did not present facts in his letter establishing that these cases were non-frivolous litigation. The two for which information is readily available were clearly frivolous. Kansas Appellate Case No. 02-90000 was denied on the merits by the KCOA in 2003, because Lynn failed to show exhaustion of KDOC administrative remedies; mandamus was inappropriate to challenge a discretionary transfer; and Lynn had no protected liberty interest against transfer to Oklahoma. Lynn v. Simmons, 32 Kan.App.2d 974 (Kan.App. Nov. 21, 2003). Similarly, Kansas Appellate Case No. 88,412 was not lost solely because Lynn's Petition for Review was not timely mailed, but because he had voluntarily dismissed the action twice, and was held to have no standing to appeal. Lynn v. Martin, 80 P.3d 1201 (KCOA Dec. 19, 2003). In Kansas Appellate Case No. 01-87911, involving a 60-1507 denial affirmed by the KCOA, Lynn filed a Motion to File Petition for Review out of time, which was denied. The claims raised and the basis for the denial by the trial court and the KCOA are not provided. Thus, the non-frivolous nature of this action is not shown. In any event, these alleged actions or inactions by unspecified prison officials occurred over two years prior to the filing of the instant complaint. Consequently, the statute of limitations for seeking money damages based upon these incidents has expired.

[10]     In 2001, Judge Sanders recused himself from one of Lynn's cases and wrote to Lynn he did "not care to be further subjected to your abusive threats to me, the attorneys, the prison officials, or the various courts throughout the state in which you have run afoul of the rules and exceeded the bounds of common decency in your pleadings, correspondence and legal proceedings. You have full access to the courts, as long you as heed warnings about abusive language to clerk." Mr. Lynn responded to this letter with name-calling and threats, and wrote nasty comments on his copy presented to this court. None of this is evidence of a denial of access to the courts.

[11]     Mr. Lynn's responses are characteristically laced with vulgar name-calling, expletives, and threatening language. His complaints included that for 2½ yrs he had been prevented by his "prison hack keepers" from filing any court case; drafting or mailing a 1501, 1507, or 1983 action; or meeting any statutory or court-ordered filing deadline. These complaints to the Commission are typical of conclusions proffered by him, and are apparently now proffered as evidence here. However, they were not supported by facts in his correspondence, and conclusory statements do not constitute evidence of denial of access.

This matter, taken as true, does not support Lynn's assertion of denial of access, since he alleges no facts indicating he had a right to appeal without prepayment of fees under the circumstances of that particular case.

**Documents 9 & 10**

Plaintiff's next pleading (Doc. 9) is entitled "Plaintiff's First Evidentiary Submission as Unlawfully Restricted by Defendants And Request for Oral Arguments and TRO/Injunction." This pleading was copied by the clerk and filed as two entries: Supplemental Response (Doc. 9), and Motions for Oral Arguments, Temporary Restraining Order and Injunction (Doc. 10). The document includes Lynn's "declaration" repeating many of his conclusory accusations. He claims his federal habeas corpus case (which he refers to as his "federal criminal habeas case and appeal/#03-3464-JAR/#05-3470") is "full of pleadings filed w/out" 500 pages of exhibits due to restrictions on his writing materials. However, Mr. Lynn does not describe the content of even one page, which he was prevented from presenting[12] in that case.

Lynn also complains that his attempts to have a fellow inmate mail legal documents for him, and to have another inmate mail a "joint" grievance written by him to the Kansas Legislature ended in

---

[12]    This is another example of Mr. Lynn's repetitive, conclusory allegations that he was not allowed to present pleadings or exhibits in a case. The docket sheet shows to the contrary that the records from Mr. Lynn's state criminal proceedings were part of the record in his federal habeas corpus case, and Mr. Lynn was able to file over 40 pleadings. <u>Lynn v. Roberts</u>, 2005 WL 3087841, No. 03-3464-JAR (Nov. 1, 2005), <u>aff'd</u>, No. 05-3470 (10th Cir. Nov. 28, 2006).

that mail being seized and delayed.[13]  He also alleges Deputy Warden Bratton refused to allow some attachments he submitted for mailing in Case No. 05-3470.  He does not describe actual injury to any case resulting from these events.  Nor does he convince this court he has a right to circumvent mail policies and restrictions at the ECF.

Exhibit # 27 is a memo from Deputy Warden Bratton dated Feb. 23, 2006, notifying Lynn he is "limited to accessing the courts regarding your criminal case for which you are currently serving time in Kansas," and that free postage will only be approved for mailing legal documents to the Clerk of the Court, Attorney General's Office, and the Judge.  Bratton further stated she would review the materials Lynn submitted for mailing to the courts "to insure the documentation is in regards to the criminal case."  Allegations that a prison official has reviewed the content of an inmate's outgoing legal mail for compliance with court orders or filing restrictions comes much closer to advancing a claim of denial of access.  However, plaintiff does not allege that Bratton actually refused to mail certain court documents based on her improper review of their content or that he was prejudiced as a result[14].

**Document 12**

Plaintiff admits in this pleading that he "prevailed upon a fellow prisoner" to mail a motion to the court in August, 2006, after he had used up his indigent postage for the month.  He also

---

[13]   This incident is discussed more fully in connection with Document 13.

[14]   Plaintiff's claim that defendant Cummings ransacked his cell and "crucial items" were taken is similar in that a claim might have been stated if any facts showing injury were alleged.

admits to having other inmates mail other documents including Document 12 herein, and having obtained additional paper and an ink pen from a fellow inmate, which he used to prepare Document 12, all in knowing circumvention of the restrictions placed upon him at ECF. He also describes incidents involving other inmates on August 20, 2006, and states in Document 17 that he is writing with a pen he received from another inmate. None of these allegations demonstrate that plaintiff has suffered prejudice to a lawsuit and thus been denied access to the courts.

The pleading filed as Document 12 is ten single-spaced pages, with Lynn asserting in the last sentence that this court must issue orders providing him with writing materials and legal copies so he can file his "overdue 10th Cir. evidentiary proofs" in Case No. 05-3470[15]. Mr. Lynn's implication that he is being impeded from filing materials in the appeal of his federal habeas corpus action then pending before the Tenth Circuit Court of Appeals, is characteristically conclusory. He fails to describe even one page that he was actually unable to submit in that case. There is no indication in the order of the Tenth Circuit Court of Appeals affirming the denial of his federal habeas corpus petition that the appeal was decided other than on the merits of his claims.

Also attached to Document 12 is a letter dated August 14, 2006, which Mr. Lynn sent to the Clerk of the Johnson County District

---

[15]    It is evident from this and all Mr. Lynn's pleadings, not that he is being denied access to the courts, but that he wastes the limited writing and mailing materials provided, by including irrelevant, repetitive, and superfluous statements and materials.

Court complaining and inquiring about a "40 pg plus KSA 22-3501 Petition" alleging "newly discovered evidence and Brady violations" mailed in May, 2004, that had not been filed; and a motion to appeal in forma pauperis submitted in 2003, that was not allowed. He also exhibits a copy of a "Request for Entry of Default" signed by him in 2003, captioned with Case No. 01-C-465 in Butler County District Court, the "Response" to that Request, and his "Reply" to the Response. None of these materials indicates Mr. Lynn has had a case improperly dismissed or impeded due to restrictions placed upon him by defendants at ECF or by the state courts. Moreover, since these actions or inactions occurred over two years prior to the filing of this complaint, the statute of limitations for collecting money damages based upon these particular events has expired.

Plaintiff also exhibits pleadings filed in another inmate's cases, which are not relevant to his claims. His right of access does not entitle him to represent other inmates in their lawsuits.

**Document 14**

Document 14 is entitled "Supplemental Motion for Oral Arguments by Video-Telephone for TRO." Lynn states this document contains proof he is entitled to a TRO to enable him to comply with "any court order," and that it is impossible to comply under the complained-of conditions. However, no proof of the legal prerequisites for the issuance of a temporary restraining order is provided.

Attached exhibits include IMPP 12-127 (2/7/05), which sets forth the KDOC policy on writing supplies, postage, and copying

services for indigent inmates.  The policy statement provides the warden has authority to deny credit to inmates to prevent abuse, but that credit shall always be extended when necessary to provide an inmate with access to the courts for criminal or non-frivolous civil litigation relating to the inmate's conviction or conditions of confinement, provided that such credit shall not exceed $50.00[16]. Also attached are letters regarding denial by ECF Legal Counsel of Mr. Lynn's request for free mailing of some materials in a federal civil case (No. 01-3422), due to his having exceeded the $50 limit, having accumulated over $1800.00 in postage fees, and the case not being a habeas corpus action or other attack upon his conviction or sentence.  Again, Mr. Lynn does not describe the content or significance of a single document for which he was denied postage and how that particular case was actually impeded as a result.

Plaintiff additionally exhibits correspondence regarding copying requests made by him to the Tenth Circuit Court of Appeals in September, 2006; which also reflects that Court's compliance with his requests.  Other exhibits indicate an attorney visited with Mr. Lynn in September, 2006, and Mr. Lynn was unhappy with and complained about the arrangements for the visit.  No prejudice to any court case is alleged or evident.

---

[16]    The policy also provides that inmates may forward their legal materials to family, friends, lawyers, etc., to have them copied.  Plaintiff states in one of his documents that his elderly father paid the filing fee in this action.  He also alleges his family will spend any funds necessary to litigate this case.  He further stated he is spending his inheritance.  Plaintiff has not been granted leave to proceed in forma pauperis in this action.  He has not established that he qualifies for that status, and these statements suggest otherwise.  He is responsible for the costs of litigating this action, including costs for materials and for service on 200 defendants, should this matter proceed beyond screening.

**Document 17**

In Document 17, Mr. Lynn now claims defendants are denying writing materials, legal copies, and postage necessary for him to draft and submit a Petition for Writ of Certiorari to the United States Supreme Court for review of the denial of his federal habeas corpus action.  At the same time, he has used his limited materials to file additional, non-responsive pleadings in this case. Plaintiff does not describe the document he must prepare for filing a Petition for Certiorari, or why the writing and postage materials he could have used over a 90-day period are inadequate[17] for that particular purpose.

The court turns to a discussion of some of plaintiff's main allegations and arguments, which it has construed as claims of denial of access.

**Inadequate writing and mailing materials.**

All the exhibits in the foregoing discussion contain portions, which the court assumed plaintiff submitted in support of this claim in particular.  The court found they failed to provide sufficient additional facts in support or show actual injury.  Mr. Lynn argues that this court must order defendants to provide him with whatever writing materials and postage he demands, because he states he is

---

[17]     Mr. Lynn has clearly indicated he often finds other resources available, plus he has had 90 days in which to file a Petition for Writ of Certiorari.  In short, he again does not allege sufficient facts to support his claim of denial of access.

indigent and that the materials are needed for his litigation[18].
Neither prison officials nor Kansas taxpayers are required by the
U.S. Constitution to provide a prison inmate with the unlimited
materials he demands based solely upon his conclusory statements of
need, particularly an inmate like Mr. Lynn who has so obviously been
an abusive litigant. See White v. State of Colorado, 157 F.3d 1226,
1233 (10th Cir. 1998), cert. denied, 526 U.S. 1008 (1999); Schlicher
v. Thomas, 111 F.3d 777, 781 (10th Cir. 1997). Instead, the state
prison's system of providing writing and postage materials to
indigents for litigation remains in place, at least until some
inmate "can demonstrate that a nonfrivolous legal claim had been
frustrated or was being impeded." See Lewis, 518 U.S. at 352-53.
Moreover, the court reiterates that the file in this case alone is
unmistakable evidence that plaintiff has had ample access to writing
and mailing materials[19]. Furthermore, this court is thoroughly
convinced that if Mr. Lynn followed this court's earlier directives
and presented nothing but facts in his pleadings, he would have
adequate writing and mailing materials to prosecute any non-
frivolous lawsuit. In addition, his pleadings and grievances might

---

[18]     In one of his latest pleadings (Doc. 19), Mr. Lynn exhibits a copy of a letter he sent
last week to ECF Legal Counsel. Therein, he makes a similar demand, typical for him, in that it is
devoid of facts regarding his actual needs: "I require ample writing paper beyond the 10 pgs. indigent
paper, legal copies, black ink pens, manila envelopes to meet court filing rules. ASAP, and its (sic)
your legal duty to provide - I'm indigent."

[19]     In Documents 6 and 7 and elsewhere, plaintiff repeatedly complains that he has been
restricted to 15 sheets of paper, 4 envelopes, and 4 postage stamps per month. These allegations of
fact, even taken as true, do not alone evince a denial of access to the courts. Other inmates who
actually are indigent are apparently managing under the same restrictive prison policy.

be more credible and actually facilitate timely and fair resolution of his complaints.  The clouded and inappropriate content of Mr. Lynn's writings, coupled with his refusal to adhere to procedures required of all other litigants and grievants[20], are undoubtedly the main sources of any delay or impediment in his legal and administrative proceedings.  The court concludes that any claim of inadequate materials to file and litigate lawsuits by Mr. Lynn is so clearly refuted by the litigation history and paper trail of this particular prison inmate as to be utterly frivolous.

**Prevention from challenging his convictions.**

Mr. Lynn repeatedly denies he committed any crime, insists he was "railroaded," and claims he is being prevented from challenging his convictions.  These allegations are conclusory and absurd in light of court records.  Lynn has had his convictions reviewed in the trial court, the state appellate courts, the U.S. District Court, and the Tenth Circuit Court of Appeals.  He had two direct criminal appeals of his convictions and sentences, and filed numerous post-conviction motions, several before his direct appeals were complete, many of which were also reviewed by the state appellate courts.  During his first direct appeal, the KCOA affirmed the judgment but vacated his sentences and remanded for re-

---

[20]     Plaintiff's conclusory allegation that he is not allowed to file administrative grievances is likewise not supported by facts, such as a description of a grievance he was not allowed to submit by a particular defendant.  Moreover, this allegation is refuted by his exhibits of numerous inmate requests and grievances he has submitted.  Plaintiff's exhibits reveal that he has had some grievances rejected because of his failure to follow proper procedure and his continued use of inappropriate language.

sentencing on March 21, 2000 (Appellate Case No. 78565).  During his second direct appeal, the KCOA affirmed on March 24, 2003, and the Kansas Supreme Court denied review on September 24, 2003 (Appellate Case No. 86942).  The direct appeal of Mr. Lynn's criminal case ended when his convictions were affirmed, review was denied by the Kansas Supreme Court, and the 90-day period for filing a Petition for Writ of Certiorari in the United States Supreme Court expired.  Thus, contrary to his allegations, the appeal of Mr. Lynn's criminal case is no longer pending.  The state and federal habeas corpus actions filed by Lynn since his criminal case became final are collateral actions, not direct appeals of his criminal convictions[21].

All Mr. Lynn's properly presented, federal habeas claims have been thoroughly considered and determined by both the federal district court and the Tenth Circuit Court of Appeals.  The rulings by the Honorable U.S. District Judge Robinson in Mr. Lynn's federal habeas corpus case refute plaintiff's conclusory claims that he was denied access to that court by any restrictions on mailing, writing materials, copies, or postage; or that he has been prevented in any fashion from challenging his convictions in federal court[22].

---

[21]  Lynn's warnings to prison officials in his grievances that deadlines in his "criminal appeal" will be impossible to make if his demands are not met are therefore inaccurate.  They also are not proof that any non-frivolous case filed by him has actually been impeded.

[22]      Under federal law, Mr. Lynn may not be entitled to file another federal habeas corpus petition challenging his state convictions except under 28 U.S.C. §2244(b)(3)(A), providing a second or successive petition for habeas corpus may be filed in the district court only if the applicant first obtains an order from the appropriate federal court of appeals authorizing the federal district court to consider the petition.  Id.  However, these statutory restrictions cannot be interpreted as an unconstitutional denial of his access.

**Prevention from challenging conditions of confinement.**

Plaintiff does not allege facts demonstrating he has been unconstitutionally prohibited or prevented by either the courts or defendants from challenging his conditions of confinement.  Contrary to this claim, he was able to file the instant complaint.  A three-strikes litigant may be prohibited from filing a conditions of confinement lawsuit under federal law without prepaying the filing fee.   The federal circuit courts have addressed the constitutionality of the three-strikes statute, 28 U.S.C. 1915(g), and agree that it is constitutional and does not deny access to courts, due process, or violate the equal protection clause.  White, 157 F.3d at 1233 [No access to court or equal protection violation.]; Shabazz v. Parsons, 127 F.3d 1246, 1248 (10th Cir. 1997)[Fee provisions are constitutional.]; Rivera v. Allin, 144 F.3d 719, 726 (11th Cir. 1998), cert. denied, 524 U.S. 978 (1998)[No violation of access to court, due process or equal protection.]; Rodriquez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999)[No access to court, due process, or equal protection violation.]; Higgins v. Carpenter, 258 F.3d 797, 801 (8th Cir. 2001), cert. denied by Early v. Harmon, 535 U.S. 1040 (2002)[Does not violate Equal protection.]; Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997)[No violation of constitutional right of access to court, due process or equal protection.]; Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997)[No equal protection, due process or access to court violation.]; Roller v. Gunn, 107 F.3d 227, 233 (4th Cir.), cert. denied, 522 U.S. 874 (1997)[Does not violate access to courts or

equal protection.]; <u>Nicholas v. Tucker</u>, 114 F.3d 17, 21 (2d Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1126 (1998)[No denial of access to courts or equal protection.]; <u>Tucker v. Branker</u>, 142 F.3d 1294, 1299 (D.C.Cir. 1998)[No violation of constitutional right of access to court, due process or equal protection.].  As several court have noted: proceeding in a civil case without prepayment of fees is a privilege, not a right; an inmate may avoid application of the statute simply by not filing meritless lawsuits; and the statute rationally places inmates in the same position as other litigants who have to weigh their resources and determine whether a lawsuit or an appeal is worth the expense.

**Challenges to state court and other federal court orders.**

Mr. Lynn inappropriately seeks review herein of and relief from orders entered in state courts such as Johnson County District Court and Butler County District Court, as well as orders by other federal district judges and the Tenth Circuit Court of Appeals, even though such relief is only available upon appeal of those orders to the appropriate appellate courts.

Having thoroughly considered all plaintiff's filings and exhibits, the court concludes Mr. Lynn has failed to show cause, as ordered in the court's prior Memorandum and Order, why his claim of denial of access to the courts should not be dismissed for failure to state sufficient facts in support.

**INTERFERENCE WITH LEGAL AND OFFICIAL MAIL**

The following conclusory allegations by Mr. Lynn are construed as a claim of interference with his legal and official mail: he is not allowed confidential correspondence with court-appointed attorneys; and, without notice, his legal and official mail is opened, read outside his presence, delayed, and destroyed. It appears from Mr. Lynn's own exhibits that some exceptional restrictions have been applied at times to his mail privileges due to his having harassed a prosecution witness in his criminal trial by mailing an obscene letter he wrote about her to her husband and others[23]. Mr. Lynn's own allegations also indicate he has repeatedly ignored mail restrictions. He does not describe any letter that he tried to send to an attorney, but mailing was refused. The court finds this claim consists mainly of mere conclusions rather than facts showing that particular mail restrictions imposed upon him by certain defendants have been arbitrary, capricious, or unwarranted. Plaintiff also fails to describe how any particular incident actually interfered with his communication with counsel or access to the courts. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

Plaintiff has adequately described one incident of lost or withheld mail. In Document 11, he asks that defendants at ECF be compelled to produce, or confirm the mailing of his "8-7-06 Motion and 23 evidentiary exhibits," which he submitted to "CO1 Hamilton" for mailing to this court, and to cease opening his mail outside his

---

[23]    Plaintiff has alleged he is on a "readable list," which apparently means all his mailings, including legal, are sent to the "I&I" to be read prior to being sent.

presence and delaying his mailings beyond 24 hours.  He exhibits eight Inmate Requests submitted by him in August, 2006, regarding this one incident.

In Document 12, Mr. Lynn declares the federal judges in this district that have issued orders in his cases are "tyrants," and he is in a "blind uncontrollable (sic) rage" over seizures without notice and destruction of his court pleadings and evidence since October 2003.  Obviously, declarations of Mr. Lynn's opinions, anger, and conclusions are not evidence of legal claims.  As noted, plaintiff's only detailed reference to a "seizure" involves his materials submitted for mailing to this court on August 7, 2006.  With regard to these materials, plaintiff alleges he did not receive the usual confirmation of actual mailing[24], and eventually sent some replacement copies with some new attachments around August 21, 2006.  The replacement materials were filed on August 25, 2006, as Document 10.  The court also received the original materials submitted by plaintiff for mailing on August 7, 2006, but not until November 9, 2006; and they were filed as Document 13.  They were accompanied by a letter from Legal Counsel at ECF stating the materials had been found, after apparently having been misplaced in the I & I department, the resultant delay was attributable to ECF staff, and should not be held against Mr. Lynn.

---

[24]    Apparently when plaintiff seeks to mail a legal document, he gives it to a correctional officer in a sealed envelope with a Form 9 taped to it addressed to the mail room supervisor.  In the Form 9, he asks for the actual mailing date and the remaining balance of his free postage for the month.

Plaintiff also submitted a copy of this letter to the court[25]. Despite how chaotic Mr. Lynn's filings may appear, he obviously is keeping close track of his materials, submissions, and filings, and was able to mitigate harm in this instance as a result. A delay of three months in mailing out an inmate's legal mail is unquestionably unacceptable. Nevertheless, actual injury[26] to support a claim of denial of access has not been shown.

Document 13 entitled "Plaintiff's First Evidentiary Submission as Unlawfully Restricted by Defendants and Request for Oral Arguments and TRO/Injunction," was docketed as "Supplement" to Lynn's response to the court's show cause order. It is the original materials, which were lost for 3 months, and initially replaced with Document 9.

Also attached to Document 13 are letters concerning a "complaint to the "Kansas Legislative Joint Committee on Corrections - KDOC Oversight Committee" written by Mr. Lynn in March, 2006, signed by him and another inmate, but submitted for mailing by the other inmate. Prison officials, concerned that Mr. Lynn was attempting to circumvent mail restrictions, delayed and reviewed the

---

[25] Another letter attached to Document 12, is dated August 28, 2006, and complains to the Mailroom Supervisor about the "destruction" of the August pleadings. Therein, Mr. Lynn calls the supervisor, other prison officials and the undersigned judge vulgar names, and states: "My family paid the $350 filing fee and will pay whatever else needs to be paid to get you lying corrupt cretins in federal court."

[26] Fortunately, the instant action has not suffered in any fashion as a result of this three-month delay in mailing. As noted, Mr. Lynn quickly discovered through the administrative process that his materials had not been mailed, soon thereafter submitted some replacement copies, and eventually the original materials were found, sent, and filed. All materials have been considered.

"complaint."  Nevertheless, it was mailed three days later with a letter explaining the delay and restrictions on Mr. Lynn.  Plaintiff does not describe any prejudice or other injury arising from this delay.

Document 14 includes a letter Lynn wrote on November 8, 2006, demanding that Correctional Officer Wolf be disciplined for his alleged mistreatment of a package of Lynn's legal mail.  No details of this incident are provided showing actual injury.  The court concludes plaintiff does not allege any injury as having resulted from the two delays, one serious and one minor, he has described.

**EXCESSIVE FORCE**

Plaintiff claims, again in conclusory terms, that he has been subjected to excessive force.  The court noted in its show cause order that plaintiff had already litigated a claim of excessive force in <u>Lynn v. Valdez</u>, 2000 WL 1817187 (D.Kan. Dec. 6, 2000, unpublished), which was tried and decided against him.  Plaintiff was ordered to state whether or not he is raising a different claim than that determined in <u>Lynn v. Valdez</u>.  He has not responded to that order.  Accordingly, the court finds no claim of excessive force is stated, which has not already been determined against plaintiff.

**ADMINISTRATIVE SEGREGATION**

Plaintiff claims he has been unlawfully held in administrative

segregation for six years, that reviews are a "sham," and as a result his mental health has "immensely" deteriorated.  He also complains he is denied all access to a telephone, television, and radio.

These claims, like his others, are conclusory.  Moreover, plaintiff's own exhibits indicate he has not been denied "all" access to the specified items[27].  They also show he improperly telephoned jurors in his criminal trial, despite his conclusory statements that he has done nothing improper with telephones.  The court concludes plaintiff has failed to allege facts indicating the restrictions placed upon his telephone and other privileges have been arbitrary, capricious, or unwarranted.

Furthermore, plaintiff alleges no facts showing his confinement in administrative segregation has been either "atypical" or without the requisite due process.  See Sandin v. Conner, 515 U.S. 472 (1995).  Attached to Document 14, he exhibits his KDOC Disciplinary Reports (DRs) since January, 1996, and notes he has been issued 91 DRs as of June 26, 2006.  Thus, his own exhibit refutes this claim by revealing a pattern of repeated and numerous disciplinary violations over a number of years.  Many of his exhibits and filings also leave little doubt that he is a recalcitrant inmate.

---

[27]     For example, plaintiff recently sent an exhibit of a grievance he submitted long after filing this lawsuit indicating he was able to telephone his father, but complaining of denial of telephone privileges to his brother's house and an attorney he says his father recently hired.  No attorney has entered an appearance in this case.  Nor does plaintiff allege he has had no alternative means to communicate with these individuals.

**BOGUS DISCIPLINARY CHARGES**

Plaintiff claims he has been subjected to "bogus" prison disciplinary charges in retaliation for filing grievances and complaints about staff misconduct and abuses. This claim consists of two different parts. First, Lynn challenges disciplinary actions taken against him. However, he does not allege facts showing that any particular disciplinary actions were "bogus." Nor does he state facts indicating that the sanctions he received for any or all his disciplinary infractions were "atypical" or arbitrary or capricious.

The only disciplinary action he describes in detail is shown by his own exhibits to have been supported by "some evidence." See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). With Documents 7 and 8, Lynn exhibits the DR written against him for violation of K.A.R. 44-12-306, "Threatening or Intimidating Any Person, Class I." The DR and the summary of testimony at the disciplinary hearing on this charge indicate Lynn's continued use of inappropriate language[28]. Other exhibits attached to Documents 7 and 8, which are

---

[28]    Plaintiff exhibits Inmate Requests he submitted regarding this incident. Reporting officer Prebbles testified at the hearing he "delivered some legal mail to inmate Lynn," and the "inmate did not agree with my method of delivery." Prebbles recounted that Mr. Lynn said to him:
> "What are you gonna do when this federal judge cuts me loose?" "Tell me about your wife, do you have kids?" and "You're gonna beg me on your fuckin' knees to stop you coward bully candy ass motherfucker."

Lynn testified that Prebbles ripped up a 38-page court order mailed to Lynn and stuffed it into the top of his cell door. He argued he would not have cussed and threatened Prebbles if his legal papers had been properly handled, and stated Prebbles had threatened him. Lynn was found guilty based on the reporting officer's sworn affirmation of the DR. The action was approved by Warden Bratton on November 14, 2005. Plaintiff appealed the action to the Secretary of Corrections. Plaintiff submits a letter he wrote to KDOC officials dated May 30, 2006, designated a "futile D/R Appeal," which is full of inappropriate language (#44). Another exhibit ends with Lynn stating, "I am not responsible for reacting to insidious abuse by prison hack bullies who run amok w/out accountability. . . ."

paginated 38 to 49, are copies of some of Lynn's "D/R appeals."
Letters are also attached that discuss Mr. Lynn's inappropriate
communications, and bear additional inappropriate comments he has
written upon them.  Plaintiff's exhibits actually disprove, rather
than support, his conclusory claims of "bogus" DRs[29].

**RETALIATION**

Plaintiff's assertions of retaliation are a separate claim,
which is equally conclusory.  It is well established that "prison
officials may not retaliate against or harass an inmate because of
the inmate's exercise of his right of access to the courts."  Smith
v. Maschner, 899 F.2d at 947.  However, plaintiff alleges no facts
even suggesting he would not have received any of the listed
disciplinary reports, "but for" the retaliatory motive of specified

---

While frustration is bound to arise from trying to process Mr. Lynn's grievances, demands, and complaints; it is entirely inappropriate for a correctional officer to tear up an order that has been mailed to an inmate from this or any court or judicial officer, including attorneys.  However, contrary to plaintiff's assertion, inappropriate behavior on the part of a correctional officer does not excuse inappropriate reaction on the part of an inmate.

Mr. Lynn also claimed in grievances that denials of court access prohibited him from filing an action under K.S.A. 60-1501 challenging this "bogus D/R."  However, Mr. Lynn alleges no facts indicating he is prevented from filing state cases when he complies with the filing restrictions.

[29]     Lynn also exhibits parts of the record regarding a DR he received for gambling and book-making.  The hearing was held without him present because, according to a response to his appeal, Lynn refused to be escorted to the hearing by correctional officer Bliss.  Lynn denies he refused, but exhibits show he demanded a new hearing without Bliss.  Lynn also repeatedly protested having Kelly as his hearing officer saying he had found Lynn guilty of "many" prior DR's.  The fact that a hearing officer or judge has previously ruled against a party does not alone establish bias.  Lynn also has no right to demand that certain correctional officers not work near him or attend his hearings.  Furthermore, he is not entitled to a declaratory or monetary judgment that would necessarily imply the invalidity of disciplinary proceedings not previously invalidated.  Edwards v. Balisok, 520 U.S. 641 (1997).

defendants.  See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Frazier v. Dubois, 922 F.2d 560, 562 FN1 (10th Cir. 1990). He does allege he was transferred out of state in retaliation for filing lawsuits and grievances.  However, he failed to adequately describe the transfer incident; and has not responded to the court's order to state whether it is different from the one he challenged in Lynn v. Simmons, 32 Kan. App.2d at 974, which was decided against him.  The court concludes sufficient facts are not provided in support of a claim of retaliation.


**KOSHER DIET**

Plaintiff newly complains in Document 12 of being denied a kosher diet.  He attaches a letter dated August 22, 2006, from the Chaplain informing him of the suspension of his kosher diet for 90 days due to his non-compliance with the diet.  Lynn has written vulgar comments on the exhibit.  He shows he submitted Inmate Requests to four persons regarding the kosher diet, one dated August, 24, 2006.  On appeal, the Warden concurred with the staff response, and Lynn provides a copy of an appeal to the Secretary of Corrections dated October 4, 2006.  The latter appeal was returned without action because it contained "threatening and disrespectful language" indicating he was not "making meaningful use of the grievance procedure."  Plaintiff was advised if he resubmitted his appeal without threatening, profane, or otherwise abusive language, it would be reviewed and a response provided.  The court finds no facts are stated by plaintiff indicating the actions of the Chaplain

were arbitrary or capricious, and no actual injury is alleged to have resulted from this temporary suspension.

## FIRST AMENDMENT FREEDOM OF SPEECH

Throughout his pleadings, Mr. Lynn claims his First Amendment rights are being violated, but as usual fails to allege facts in support.  The court assumes from some of Mr. Lynn's allegations, that he believes he is being punished for and prevented from speaking out regarding what he views as corrupt and improper behavior on the part of prison officials and other state and federal officials.  Mr. Lynn's filings in this case and others show he has been repeatedly vulgar, abusive, and menacing to those with lawful authority over him during his incarceration.  He has frequently refused to follow rules and specific orders regulating his behavior while in prison and continuously threatened to sue and even hurt or kill those with authority over him and his legal filings.  He has threatened family members of officials as well.  While confined, he has harangued and harassed the victim of his crimes and a witness to his crimes.  He has improperly and maliciously harassed people by mail and telephone, and continues to do so by court action.  He assails many for what he views as their lack of integrity and dishonesty, while insisting that his own improper, malicious behavior is protected under the First Amendment to the U.S. Constitution.

Mr. Lynn has no protected right to speak vulgarly and disrespectfully to court personnel during judicial proceedings.  He

has no constitutional right to behave inappropriately in violation of rules and orders while in prison, and certainly none to threaten and verbally abuse prison personnel.  Prison officials are well within their authority to require that Mr. Lynn attempt to correct his inappropriate behavior, and to punish him when he commits disciplinary infractions.  The court finds Mr. Lynn utterly fails to allege facts indicating any named defendant has violated his free speech rights under the First Amendment, which have survived his incarceration.

In sum, the court finds plaintiff has failed to show cause why this action should not be dismissed on account of his failure to state facts supporting his claims of constitutional violation.  The court concludes this action must be dismissed for failure to state a claim under 28 U.S.C. §1915(A)(b) and 42 U.S.C. §1997e(c)(1).

**IT IS THEREFORE ORDERED** that this action is dismissed and all relief denied.

**IT IS FURTHER ORDERED** that all plaintiff's motions and requests for reassignment of this case; for reconsideration (Doc. 6); preliminary relief (Docs. 6, 10, 14, 16, 17, 19); oral arguments (Docs. 6, 8, 10, 11, 14, 17); hearings (Docs. 16, 18, 19); to stay (Doc. 6); orders and other relief (Docs. 6, 10, 11, 12, 14); and appointment of counsel (Doc. 20); are denied for the reasons stated herein, as without factual or legal basis, and as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Amend information regarding certain named defendants (Doc. 15) is granted.

**IT IS FURTHER ORDERED** that any document filed by Mr. Lynn in this case after entry of this order, whether as a pleading, motion, argument, or exhibit, containing even a single profanity, vulgar reference, or suggestion of a threat against any person will be stricken from the record and given no further consideration by this court.

**IT IS SO ORDERED.**

Dated this 26th day of January, 2007, at Topeka, Kansas.




                              s/Sam A. Crow
                              U. S. Senior District Judge